**FAAMAO TIUMALU for the Tiumalu Family
of Fagatogo, Plaintiff**

v.

**LIO LEASIO of Fagatogo, Defendant**

No. 21-1955

High Court of American Samoa

Civil Jurisdiction, Trial Division

December 12, 1955

ARTHUR A. MORROW, *Chief Judge;* APE, *Associate Judge;* TAUALA, *Associate Judge.*

OPINION AND ORDER IN RE INJUNCTION

Heard at Fagatogo on Nov. 29, 1955 before MORROW, *Chief Judge* and APE and TAUALA, *Associate Judges.*

Tuiasosopo, counsel for Faamao Tiumalu acting for the Tiumalu Family.

Lio Leasio *pro se.*

OPINION OF THE COURT

MORROW, *Chief Judge.*

On November 22, 1955 Faamao Tiumalu acting in behalf of the Tiumalu Family (clan) of Fagatogo filed a petition in this Court seeking an order restraining Lio Lea-

177

sio, a member of the Tiumalu Family, from leveling off certain land in Fagatogo "until a matai is chosen by the family." A temporary restraining order was issued. Prior to hearing testimony on November 29, 1955 the Court viewed the land involved in the presence of the parties and counsel.

At the hearing it appeared that the defendant was leveling off certain land in Fagatogo, which is communal land of the Tiumalu Family, preparatory to building a palagi-styled house thereon for the use of himself and his immediate family. The plot on which the leveling was being done lays adjacent to and north of the Tiumalu Family burial ground. The defendant lives in a house on land to the east of the place where the leveling was being done. This land, also adjacent to and north of the burial plot, is likewise communal land of the Tiumalu Family. During rainy weather the house is flooded. Defendant was born at the place where his house now is and has lived there all of his life as did his mother before him. The area on which the leveling was being done was used by the defendant for plantations.

It appeared from the evidence that the Tiumalu Family originally had two burial grounds in Fagatogo. However, one of them was purchased for governmental purposes by the Navy when the Navy first came to American Samoa in 1900. It became a part of the U.S. Naval Station. The other burial ground, adjacent to the place that was being leveled off, has continued to be used by the Tiumalu Family for burial purposes.

This burial ground is quite small and contains, according to the evidence, about 60 graves with two or three people, in some instances, being buried in a single grave. It should be stated that in a part of the graves containing more than one body, such burials were due to the wish of a mother to be buried in the grave where her daughter had

been buried or a daughter wishing to be buried in the grave of her mother.

■ The last Tiumalu died about a year and a half ago and a new Tiumalu has not yet been chosen by the Family. It is the custom in Samoa for the matai of a family, subject to certain limitations, to control family lands. And that has been the custom since long before the Navy came to Samoa in 1900. Sec. 2 of the A. S. Code among other things provides that "The customs of the Samoans not in conflict with the laws of American Samoa or the laws of the United States concerning American Samoa shall be preserved." It has been the custom for the matai of the family either with the express or implied consent of the family to determine where the burial plot of the family on communal family lands shall be. It is clear to us that the Tiumalu Family needs to have its present burial plot extended or to have an entirely new burial plot.

We doubt if the evidence for the plaintiff warrants the conclusion that the plot being leveled off by the defendant had already been set aside by a former matai of the family for burial purposes. The evidence for the defendant clearly shows that such was not the case. Despite the crowded condition of the adjacent burial ground, there is not a single grave on the plot being leveled. However, it was clear to the Court from the evidence that such plot would be a suitable burial place (being merely an extension of the present burial plot) and that it may well be that the new matai, when he is chosen, may designate such plot as a burial ground with express or implied consent of the Family. If the defendant continues to level off that plot and then build a palagi house on it for himself and family, it would as a practical matter foreclose setting aside the plot for burial purposes.

■ It should be emphasized that the defendant does not own the land he was leveling off. It is the communal land of

179

the Tiumalu Family. Of course he was using it for plantation purposes through assignment by his matai in accordance with Samoan customs. Since he was born on the tract of which this is a part and has lived on it all of his life and as did his mother, it may well be that the assignment to the defendant was by implication rather than by express words. But we think that any rights of the defendant in the land through assignment under Samoan customs were subject to the senior right of the Family to have it for a burial plot when necessary if the matai with the express or implied consent of the family so decided. Of course the defendant, being a member of the family, has a right under Samoan customs to have a part of the communal family lands assigned to him for residential and plantation purposes and he could not have land previously assigned to him for plantation purposes turned over for purposes of a family burial plot without first being assigned other suitable land of the Family for plantation purposes.

█ It should be noted that the plaintiff does not ask for a permanent injunction. He only asks that the defendant be restrained "until a matai is chosen by the Family." We do not think that the Family or any branch of it represented by the plaintiff may prevent the selection of a new matai indefinitely with a view to having the defendant perpetually restrained from leveling off the land and building his house thereon. But we do think, in view of Samoan customs and the circumstances of this case, that the plaintiff, acting in behalf of the Family, does have the right to a restraining order to continue in force until such time as a new matai (selected within a reasonable time) may have had a reasonable time to select a new burial ground or extend the present burial ground, with the express or implied consent of the Family, if he desires to do so.

When we viewed the property, counsel for the Family who is a leading member of the Family informed us that 30

180

days would be sufficient time within which to select a new matai. It is our opinion that 30 days is a reasonable time. However, we fully realize that in many families it is not possible, on account of division therein, to get a new matai except through court action. If such should turn out to be the case in the Tiumalu Family, 30 additional days would have to be allowed within which objections might be filed by opposing candidates. In view of the unusual circumstances brought about by this case we believe the Court could act within an additional 40 days and the new matai and the Family ought to be able to act with respect to a burial plot within 10 days thereafter.

We think under the circumstances that the plaintiff acting in behalf of the Family is entitled to have the present injunction continue in force until 10 days after a new matai shall have been selected either by the Family or by the Court, and registered, or 110 days, whichever may be the lesser.

### ORDER

Accordingly it is ORDERED that the preliminary injunction issued on November 23, 1955 restraining the defendant Lio Leasio from leveling certain Tiumalu Family land in Fagatogo shall continue in force until 10 days after a new Tiumalu shall have been selected either by the Family or by the Court, and registered, or 110 days from Dec. 12, 1955, the date of this Order, whichever shall be the lesser.

Costs in the sum of $12.00 are hereby assessed against Lio Leasio, the same to be paid within 30 days.